**STEWART v. OVERHOLSER.**

No. 10063.

United States Court of Appeals
District of Columbia Circuit.

Reargued May 26, 1950.

Decided Nov. 9, 1950.

Miller, Clark and Prettyman, Circuit Judges, dissented.

Mr. Mallory R. Smith, Washington, D. C., (appointed by this court) for appellant. Mr. Mac Asbill, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty. and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Messrs. John D. Lane, John J. O'Leary and L. Clark Ewing, Asst. U. S. Attys., all of Washington, D. C., also entered appearances for appellee.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K. MILLER, PRETTYMAN, PROCTOR. BAZELON, FAHY, and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

A petition for a writ of habeas corpus was filed in the District Court by Ray M. Stewart on August 23, 1948, alleging his illegal confinement at St. Elizabeths Hospital in Washington by its Superintendent. The petition states he was confined because of alleged mental incompetency but that "he is of sound mind as he knows right from wrong." He also challenges the validity of his original commitment in 1932. A rule to show cause issued, to which the acting Superintendent filed a return admitting the restraint but denying its illegality. The return recites certain events in the life of petitioner before his commitment and sets forth earlier legal proceedings. These include his commitment in 1932 after a finding by the court that he was of unsound mind, and applications for writs of habeas corpus filed by him in 1932, 1933, 1937, and 1939. It also alleges that in April, 1944, and again on December 13, 1946, hearings were held in the District Court resulting in each instance in remand of Stewart to the custody of the Superintendent. Finally the return sets forth the opinion of respondent and of other members of the hospital staff skilled in the care, diagnosis and treatment of nervous and mental disorders that Stewart is of unsound mind, suffering from psychosis, paranoid type, with psychopathic personality, and would be dangerous to himself and others were he to be discharged into the community.

Upon consideration of the petition, rule to show cause and return, but without a hearing, the court entered an order on September 16, 1948, dismissing the petition and discharging the rule. The appeal is from this order. Since it was entered after September 1, 1948,[1] the effective date of the new Judicial Code, we are of the opinion

---

1. The return was filed August 31, 1948.

its provisions apply. In relevant part we set them forth.[2] Our decision on the merits, however, would be the same were previous statutes relating to the writ thought to apply. We have considered also the statutes of the District of Columbia.[3] Assuming them to be in effect, they too do not require a different result.

Preliminarily we also note the absence of doubt as to the appropriateness of the procedure of habeas corpus to test the legality of detention for alleged unsoundness of mind, including the challenge of continued detention because of the claim of restoration to sanity. Overholser v. Boddie, 87 U.S.App.D.C. ——, 184 F.2d 240.

See, also, Ex parte Rosier, 1942, 76 U.S. App.D.C. 214, 223, 133 F.2d 316, 325 and 21 D.C.Code, § 325 (1940).

The controversy is over the question whether in the circumstances of this case the court erred in dismissing the petition and discharging the rule without a hearing on the question of sanity.[4]

 The petition alleges that Stewart "is of sound mind." The addition of the explanatory words "as he knows right from wrong" does not convert this allegation into something less than one of soundness of mind. See Stephens, J., in Ex parte Rosier, 76 U.S.App.D.C. at page 224, 133 F.2d at page 326. This is so notwithstand-

2. 28 U.S.C.A. § 2243. *Issuance of writ; return; hearing; decision.*

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

\* \* \* \* \*

"The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.

"When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.

"Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

"The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.

"The return and all suggestions made against it may be amended, by leave of court, before or after being filed.

"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

28 U.S.C.A. § 2244, *Finality of determination,* incorporated, *infra,* in this opinion.

3. 16 D.C.Code, § 801 (1940). *Petition— Sufficiency—Issuance of writ by court or justice.*

"\* \* \* and the court or the justice applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant such writ, directed to the officer or other person in whose custody or

keeping the party so detained shall be, returnable forthwith before said court or justice."

16 D.C.Code, § 802 (1940). *Service of writ—Return.*

"The said writ shall be served by delivering it to the officer or other person to whom it is directed, or by leaving it at the prison or place at which the party suing it out is detained; and such officer or other person shall forthwith, or within such reasonable time as the court or justice shall direct, make return of the writ and cause the person detained to be brought before the court or justice, according to the command of the writ, and shall likewise certify the true cause of his detainer or imprisonment, if any, and under what color or pretense such person is confined or restrained of his liberty."

16 D.C.Code, § 806 (1940). *Inquiry into cause of detention—Bail—Bond.*

"On the return of the writ of habeas corpus and the production of the person detained the court or justice shall immediately inquire into the legality and propriety of such confinement or detention, and if it shall appear that such person is detained without legal warrant or authority, he shall immediately be released or discharged; or if the court or justice shall deem his detention to be lawful and proper, he shall be remanded to the same custody, or, in a proper case, admitted to bail, if he be confined on a charge of a bailable criminal offense; and if he be bailed, the court or justice shall require a sufficient bond or recognizance to answer in the proper court, and transmit the same to said court."

4. We are not concerned with the power of the district judge to act on the basis of his own findings, a matter recently clarified in Overholser v. Boddie, supra.

ing there may be some types of insanity accompanied with the ability to distinguish right from wrong. Skill and perfection in petitioner's method of alleging sanity is not required. Darr v. Burford, 1950, 339 U.S. 200, 203, 70 S.Ct. 587; Stephens, J., in Ex parte Rosier, 76 U.S.App.D.C. at pages 222, 224, 133 F.2d at pages 324, 326. See, also, Rule 8 (f), Fed.Rules Civ.Proc., 28 U.S.C.A. " * * * *habeas corpus* has long been regarded as a proceeding in which a liberal judicial attitude is peculiarly appropriate in view of the broadly remedial nature of the writ." Mercado v. United States, 1 Cir., 183 F.2d 486, 487. Furthermore, we may not construe the petitioner's words as failing to assert present sanity because he also attacks as illegal the previous adjudication to the contrary; for although he means to say he has always been sane it is also true that he means to say he is sane at the time he files the petition.

 The return, in setting forth aspects of earlier personal conduct of petitioner, court proceedings which include his prior unsuccessful efforts to secure release, and opinions that petitioner remains of unsound mind, joins issue on the question of sanity.[5] Recitations regarding the nature of his affliction and other details to which we have referred do not alter this situation.

 When a factual issue is at the core of a detention challenged by an application for the writ it ordinarily must be resolved by the hearing process. This is a chief purpose of the habeas corpus procedure. "Nothing less will satisfy the command of the statute that the judge shall proceed 'to determine the facts of the case, by hearing the testimony and arguments'.[6] * * * The Government properly concedes that if the petition, the return, and the traverse raise substantial issues of fact it is the petitioner's right to have those issues heard and determined in the manner the statute prescribes. * * * denials only serve to make the issues which must be resolved by evidence taken in the usual way. * * * " Walker v. Johnston, 1941, 312 U.S. 275, at pages 285–287, 61 S.Ct. 574, 579, 85 L.Ed. 830. To similar effect are Holiday v. Johnston, 1941, 313 U.S. 342, 350, 550, 61 S.Ct. 1015, 85 L. Ed. 1392; Waley v. Johnston, 1942, 316 U. S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Cochran v. Kansas, 1942, 316 U.S. 255, 62 S.

5. We read § 2248 of the Judicial Code as not requiring a traverse when a factual issue has been clearly framed by the petition and the return or answer. This section provides that the allegations of a return or answer to an order to show cause shall be accepted as true if not traversed, except to the extent the judge finds from the evidence that they are not true. This contemplates that where the petition and return or answer do present an issue of fact material to the legality of detention, evidence is required to resolve that issue despite the absence of a traverse. This reference to evidence assumes a hearing on issues raised by the allegations of the petition and the return or answer to the order to show cause.

According to the rule of pleading illustrated in Kay v. Carr, 9 Cir., 88 F.2d 297, 298, the issues in a habeas corpus case " * * * are framed upon the return and denial without reference to the petition for the writ." This rule, however, is inconsistent with the treatment of the petition as a pleading accorded by this Court in Hammerer v. Huff, 71 U.S.

App.D.C. 246, 110 F.2d 113, and by the Supreme Court in, for example, Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302, and Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453. In the Waley and Cochran cases the Supreme Court treated the allegations of the petition as allegations of fact which, not being denied, required a hearing. If this is so, the denial by an answer or return of factual allegations set forth in a petition for the writ would not require a traverse to raise the issue.

This position is also supported by § 2243 which states:

\* \* \* \* \*

"Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained."

This wording clearly assumes that the application and the return, without traverse or other formal pleading, may present issues of fact that must be determined at a hearing.

6. Rev.Stat. § 761 (1875).

Ct. 1068, 86 L.Ed. 1453; and Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

There is, however, another factor to be considered before we conclude finally that a hearing was required. The statutes now include a provision, enacted June 25, 1948, effective September 1, 1948, which reads as follows:

"No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States, or of any State, if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry." 28 U.S.C.A. § 2244.

It is not questioned that the legality of petitioner's detention had been determined in the court below on December 13, 1946, and in other proceedings prior thereto, as set forth in the return. Accordingly, unless some new ground was presented or he thought the ends of justice would be served by an inquiry even in the absence of new grounds the judge was not required to entertain the petition of August 23, 1948. This provision that a new inquiry is not mandatory when no new ground appears grew out of the practice which the courts had adopted. The notes in the revised code under § 2244 state: "This section makes no material change in existing practice. Notwithstanding the opportunity open to litigants to abuse the writ, the courts have consistently refused to entertain successive 'nuisance' applications for habeas corpus." The decision of this court in Dorsey v. Gill, 1945, 80 U.S.App.D.C. 9, 148 F.2d 857, is referred to in the notes as illustrative of the practice. The rule had become established that issuance of the writ, and consequent hearing, should ordinarily be withheld in the exercise of a sound judicial discretion where there had been a prior decision on a like application adverse to the petitioner. This was deemed consistent with the provisions of Rev.Stat. § 761 then in effect that the party should be disposed of "as law and justice require." Salinger v. Loisel, 1924, 265 U.S. 224, 231, 44 S.Ct. 519, 521, 68 L.Ed. 989. See, also, Rookard v. Huff, 1944, 79 U.S.App.D.C. 291, 145 F.2d 708; Pope v. Huff, 1944, 79 U.S.App.D.C. 18, 141 F.2d 727. See Darr v. Burford, supra, 339 U.S. at pages 214–215, 70 S.Ct. 587. In the Rookard case the opinion in the Pope case is approvingly quoted as follows: " 'Though the doctrine of res judicata does not apply to habeas corpus proceedings, the fact that the same issues have been decided in a former proceeding may, and sometimes should, as a matter of judicial discretion, be given controlling weight. * * *' " [79 U.S.App. D.C. 291, 145 F.2d 709.] See, also, Beard v. Bennett, 1940, 72 App.D.C. 269, 114 F. 2d 578. These cases illustrate, though not explicitly, the distinction between applications for the writ by one imprisoned for crime and one detained in an institution because of mental incompetency. In the former the legality of the detention usually may be established with finality in one proceeding. Jurisdiction of the court, conduct of the trial, legality of sentence— these do not change, and having once been determined on adequate hearing are not new grounds when again brought forth in another application for the writ. But the situation now before us is different. A determination that Stewart was insane in December, 1946, did not determine his mental condition in August, 1948. In none of the cases to which we have referred as developing the practice which finds expression in § 2244 of the Judicial Code was the question of mental capacity involved. The decision of this court in Ex parte Jordan, 1946, 81 U.S.App.D.C. 308, 158 F.2d 401, did involve confinement at St. Elizabeths for unsoundness of mind, but the petition had been filed only five weeks after a hearing which had resulted in remand of petitioner to the hospital. We said, " * * * there is nothing now shown that was not previously considered." While recognizing "that even in the most desperate types of insanity and those in which the prognosis is apparently hopeless, there may be op-

portunity of recovery," we said that "this mere possibility certainly is not of itself enough. If it were, then every insane person might file a new but similar petition every week" and receive a hearing. It was said that in the exercise of a sound judicial discretion it was entirely proper not to reopen the question five or six weeks later on the same allegations; at least some allegation of an alteration in petitioner's mental state should be required.

We do not think § 2244, supra, or the practice which in substance it codifies and which was recognized in such cases as Ex parte Jordan, supra, permitted the court in the case at bar to deny a hearing on the factual issue of sanity. The petition was filed twenty months after the hearing of December 13, 1946. During that interval Stewart had continued under institutional care. This considerable additional passage of time, spent in such circumstances, gives meaning to his allegation in August, 1948, that "he is of sound mind" which did not attach to his like statement in December, 1946. The proof might or might not result in the same resolution of the issue, but the issue had changed. This is not to say that in mental cases a new issue is presented each day or week or month, in any practical sense which the court must recognize as a basis for a new hearing, or that a tenuous or frivolous or formal change in allegations must be construed as presenting new ground. But here twenty months, considered with the past, is such a substantial period within which the healing effects of time and circumstance might uncloud the mind as to cause a new issue to be presented.

Abuse of the writ was at the basis of the decision in Ex parte Jordan, supra. This also was the reason for the dissent in Ex parte Rosier, supra. No substantial period of time had elapsed since the previous hearing. No abuse is here involved, because a period of twenty months had elapsed. No explicit allegation of an alteration in mental state, or of restoration to sanity, Cf. Ex parte Jordan, 81 U.S.App. D.C. at page 309, 158 F.2d. at page 402, is necessary in these circumstances. Petitioner is not required, as the sole method of alleging new ground, to admit that he was once insane, was properly so adjudged, and to say that he has recovered; and even though allegations attacking his original adjudication might be insufficient as an assertion of new ground because that question had been determined, this does not destroy the effect of his separate allegation of present sanity. This presents a factual question which had not been presented or decided previously. In such circumstance no discretion to withhold the writ resided in the judge. The discretion authorized by the statute, § 2244, permits issuance of the writ notwithstanding the legality of the detention has been determined on a previous application and no new ground is stated. It is not a discretion to deny the writ when new ground does appear. See Sen. Rep. No. 1559, 80th Cong.2nd Sess. (1948), Amendment No. 45.

To uphold the dismissal of the petition without a hearing on the issue of sanity would in our opinion endanger the availability of the writ in this field of its lawful use. The need for courts to be relieved of making a new inquiry where the issue has been settled, supplied by § 2244 and by the practice which preceded it, and thus to prevent abuse of the writ, does not bar inquiry after so substantial a period of time and of treatment as has occurred in this case.

The statutes provide that the writ, or order to show cause, shall issue "unless it appears from the application that the applicant or person detained is not entitled thereto." § 2243. See Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936. The provision in the same section for a rule to show cause conforms with previous practice, Walker v. Johnston, supra;[7] Ex

---

7. " * * * Since the allegations of such petitions are often inconclusive, the practice has grown up of issuing an order to show cause, which the respondent may answer. By this procedure the facts on which the opposing parties rely may be exhibited, and the court may find that no issue of fact is involved. In this way useless grant of the writ with consequent production of the prisoner and of witnesses may be avoided where from undisputed facts or from incontrovertible facts,

parte Rosier, 76 U.S.App.D.C. at page 224, 133 F.2d at page 326; and we do not doubt in this case the propriety of issuing a rule to show cause. Furthermore, in construing § 2243 in the light of judicial practice, we also do not doubt the right of the court to consider the return in deciding whether to dismiss the petition or to hold a hearing. While it is true the statute says that when the order to show cause is returned "a day shall be set for hearing, * * *" (§ 2243; see, also, 16 D.C.Code §§ 801–806 (1940), this language must be read with § 2244 and the last paragraph of § 2255 stating that the judge is not required to entertain the application under certain conditions therein enumerated. These conditions are not likely to appear from the petition alone. They might appear from the return. Accordingly the purpose of these provisions would be frustrated were a hearing required in every case where an order to show cause is issued and a return is made. When a hearing is required, however, the body of the person detained shall be produced unless the application and return present only issues of law, § 2243, and "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." (Ibid.) Here the question presented was one of fact to be resolved by evidence as to petitioner's sanity.

We find nothing in our previous decisions inconsistent with our conclusion that a hearing should have been accorded on the factual issue of sanity. In Dorsey v. Gill, supra, now overruled by Overholser v. Boddie, supra, the effort was to secure release from imprisonment for crime. The several grounds asserted were held inadequate to upset the conviction by habeas corpus procedures. Ex parte Jordan, supra, as we have noted, presented the problem of a second hearing within a few weeks

on the same issue. As to the three opinions in Ex parte Rosier, supra, the main opinion of Justice Stephens clearly supports a hearing in the case at bar. Equally so, for reasons therein briefly stated, does the concurring opinion of Justice Vinson. The dissent of Justice Rutledge also intimates that in a factual situation like that now presented the elapsed period between the petitions would necessitate a hearing, though he thought the few months which had intervened in that case did not.

Since we are remanding the case to enable a hearing to be had on the factual issue of present sanity, it is not necessary to go into the question whether a hearing in any event was required as to the nature and effect of the prior proceedings referred to in the return. No question is raised as to the correctness of the allegations of the return regarding those proceedings. We accordingly reserve decision as to the manner in which the trial court should determine the nature and effect of such prior adjudications when any question is necessary to be decided regarding them. In view of our remand so that a hearing may be had on the issue of present sanity, all pertinent questions of law as well as of fact will be subject to disposition in the manner usual and appropriate to a hearing involving the taking of testimony followed by a decision based on the facts and the law.

Reversed and remanded.

WILBUR K. MILLER, Circuit Judge, with whom Circuit Judges CLARK and PRETTYMAN join, *dissenting:* I cannot agree with the conclusion reached by the court. This case is of such importance in this jurisdiction that I feel justified in stating somewhat at length the manner in which I think it should be decided.

such as those recited in a court record, it appears, as matter of law, no cause for granting the writ exists. On the other hand, on the facts admitted, it may appear that, as matter of law, the prisoner is entitled to the writ and to a discharge. This practice has long been followed by this court and by the lower courts. It is a convenient one, deprives the petitioner

of no substantial right, if the petition and traverse are treated, as we think they should be, as together constituting the application for the writ, and the return to the rule as setting up the facts thought to warrant its denial, and if issues of fact emerging from the pleadings are tried as required by the statute." 312 U.S. at page 284, 61 S.Ct. at page 578.

On June 1, 1932, the appellant, Ray M. Stewart, was adjudged to be of unsound mind. Continuously since then he has been a patient in St. Elizabeths, a federal mental hospital in the District of Columbia. During his long confinement, Stewart has frequently applied to the United States District Court for a writ of habeas corpus. Some of his petitions, all of which are substantially of the same tenor, have been rejected as insufficient to justify either issuing the writ or ruling the respondent to show cause why it should not issue. On at least two occasions, however, a trial judge entertained the petition, ruled the superintendent of the hospital to show cause and, after hearing evidence, concluded Stewart was still insane and in need of further treatment.

The following petition, which initiated the case before us, was mailed to the District Court on August 12, 1948:

"I. Your petitioner Ray M. Stewart represents and states to this Honorable Court that he is restrained of his liberty and illegally confined at St. Elizabeth's Hospital, Washington, D. C., by the superintendent of said institution.

"II. To the best of the knowledge and belief of your petitioner the cause of said restraint is—Alleged Mental Incompetency —but the same is false and he should be released therefrom.

"III. Your petitioner avers that he is of sound mind as he knows right from wrong.

"IV. He further states that the name under which he was committed is not his.

"V. Your petitioner further states that he has never been properly adjudicated as one of those giving expert testimony was neither a doctor nor psychiatrist, to wit, one Earl Elliott Dudding.

"VI. As the impostor mentioned above signed the Lunacy Enquirento (*sic*), the same was invalid and the subsequent arrest null and void as well as fraudulent.

"VII. The object of said confinement was to mulch (*sic*) your petitioner of the money left him by his late mother Mrs. Marget P. Stewart, in the Anacostia Bank, 2010 Nichols Avenue S. E., and by his father illegally withdrawn therefrom.

"VIII. Your petitioner states that he was without benefit of counsel at said false adjudication.

"IX. He further avers that he was not allowed to speak in his own behalf at said hearing.

"X. Wherefore your petitioner prays this Honorable Court to grant this petition and issue a Writ of Habeas Corpus to the end that he be given the redress due him after proper hearing in said Court."

District Judge Richmond B. Keech, to whom the foregoing application was submitted, issued a rule against the superintendent of St. Elizabeths to show cause why a writ of habeas corpus should not issue. The comprehensive return made to the rule is here reproduced in full, because it must be considered in the disposition of this case:

"The return and answer on behalf of Dr. Samuel A. Silk, Acting Superintendent, Saint Elizabeths Hospital, to the petition of Raymond M. Stewart, alias James C. Smith, (Ray M. Stewart), on an order of the Court to show cause why writ of habeas corpus should not issue:

"In answer to Paragraphs I, II and III of the petition:

"The respondent admits that the petitioner, Raymond M. Stewart, alias James C. Smith, (Ray M. Stewart), is restrained of his liberty in Saint Elizabeths Hospital, but denies that such restraint is illegal.

"The petitioner, Raymond M. Stewart, alias James C. Smith, (Ray M. Stewart), was admitted to Saint Elizabeths Hospital May 14, 1932, in consequence of a temporary commitment signed by the Commissioners of the District of Columbia. A copy of this commitment paper is appended hereto, marked Exhibit 'A', and prayed to be read as a part of this return.

"On June 1, 1932, this petitioner appeared in Court for a judicial inquiry into his mental condition. The hearing was held before Mr. Justice Letts of the District of Columbia Supreme Court. A lengthy hear-

ing was had at that time, and the petitioner was found of unsound mind and committed to Saint Elizabeths Hospital. A copy of this commitment is appended hereto, marked Exhibit 'B', and prayed to be read as a part of this return.

"In answer to Paragraph IV of the petition, the respondent states that the petitioner was committed to Saint Elizabeths Hospital under the name of Raymond M. Stewart and that he has no further knowledge concerning this matter.

"In answer to Paragraphs V, VI, VII, VIII and IX, the respondent states that he has no knowledge of these matters.

"For the further information of the Honorable Court, the respondent wishes to state the following: The petitioner, Raymond M. Stewart, alias James C. Smith, (Ray M. Stewart), has had difficulty in adjusting to society, and has been in conflict with the law for many years. In 1914 the petitioner, then being about nineteen years of age, was arrested on a charge of housebreaking and was out on bail on this charge. Upon return to Court he learned that his bail was to be rescinded and that he was to be sentenced. He thereupon drew a gun, which he had concealed upon his person, and fired it about the court room—said court room being in the District of Columbia. Following this episode, the petitioner was sentenced to six years in the penitentiary, serving in the Maryland State Penitentiary. Shortly after being released from this penitentiary, he received a sentence of from one to twenty years at Mansfield, Ohio, for passing a bad check. About seven months after starting this sentence, he struck a prison guard over the head, rendering him unconscious, and was given an additional sentence of not less than fourteen or more than fifteen months in the State Penitentiary at Columbus, Ohio. Some time during the early part of 1932, he was released from the penitentiary on parole and returned to Washington, D. C., obtaining employment with a hosiery company, selling goods on a house-to-house canvass. Shortly thereafter, relatives noted that he was manifesting peculiar behavior. He would quarrel with relatives and friends, or talk about getting a gun and sending them to the morgue. He spoke of making large sums of money by building houses on credit, although he had no financial standing whatever. Finally, on April 14, 1932, thirteen days after being paroled from prison, he was taken to Gallinger Municipal Hospital for mental observation, being transferred to Saint Elizabeths Hospital May 14, 1932.

"For the further information of the Honorable Court, the respondent wishes to state that the petitioner has filed numerous petitions for a writ of habeas corpus in the District Court of the United States for the District of Columbia, among which were Habeas Corpus No. 1676 filed December 20, 1932, the writ being discharged January 4, 1933; Habeas Corpus No. 1886 filed April 7, 1937, the writ being discharged April 15, 1937; Habeas Corpus No. 1944 filed June 7, 1939, the writ being discharged June 17, 1939. In another petition for a writ of Habeas Corpus, No. 2089, Mr. Justice Bolitha J. Laws, after examining previous writs, denied the issaunce of a writ of habeas corpus, on the grounds that no new matters had been set forth other than the petitioner's allegation that he was sane and that he was able to tell right from wrong.

"For the further information of the Honorable Court, the respondent states that on April 5, 1944, the petitioner, Raymond M. Stewart, alias James C. Smith, (Ray M. Stewart), appeared in the District Court of the United States for the District of Columbia for hearing in Habeas Corpus No. 2567. A full and complete hearing was had, following which the Presiding Justice, Honorable James W. Morris, discharged the writ, dismissed the petition, and remanded the petitioner into the custody of the respondent.

"For the further information of the Honorable Court, the respondent states that on December 13, 1946, the petitioner, Raymond M. Stewart, alias James C. Smith (Ray M. Stewart), appeared in the District Court of the United States for the District of Columbia for hearing in Habeas Corpus No. 3118. A full and complete hearing was had, following which the Presiding Justice,

Honorable T. Alan Goldsborough, discharged the writ, dismissed the petition, and remanded the petitioner into the custody of the respondent.

"Since his admission to Saint Elizabeths Hospital, the petitioner has been under the care and observation of the respondent, as well as other members of the Staff of Saint Elizabeths Hospital, skilled in the care, diagnosis and treatment of nervous and mental disorders, who are of the opinion that he is of unsound mind, suffering from Psychosis, Paranoid Type, with Psychopathic Personality, and that he would be dangerous to himself and others were he to be discharged into the community."

The matter was disposed of in the District Court by Judge Letts, who entered the following order:

"Upon consideration of the petition, the rule to show cause, and the return and answer thereto, it is by the Court this 17th day of September, 1948,

"*Ordered,* That the petition be dismissed, the rule to show cause discharged, and the petitioner remanded to the custody of the respondent."

The case is before us on appeal from this order, it being asserted by the appellant that "The District Court erred in failing to grant to Appellant a hearing upon the issue of fact posed by the petition and the return to the rule to show cause."

Having assigned error in that language, able counsel appointed by us to act for appellant attempted in his brief to establish the proposition that when *an application for the writ* states facts constituting illegal detention, a hearing to determine those factual issues is mandatorily required.[1] Appellant's brief also stated, either additionally or alternatively, that a hearing must be afforded to determine issues of fact posed by the application for the writ *and the return to the rule to show cause*.[2] The two theses differ widely. An application

---

1. The fact that the appellant argues that the factual allegations of the petition alone, if sufficient in law, must be determined in a hearing appears from the following passages found in his brief:

 "The error which was committed below which should require a reversal by this Court, was the failure of the District Judge to grant a hearing on the issue of appellant's sanity or insanity after the issue clearly had been raised *by the petition.* * * *

 "The most obvious reason why the denial of a hearing constituted error on the part of the District Judge is that the statutory provisions governing habeas corpus proceedings unequivocally state that a petitioner is entitled to be brought before a judge and to introduce evidence on issues of fact raised *by the petition,* and that the court must 'hear and determine' the facts. * * *
 * * * * *

 "Where issues of fact are raised *by a petition for habeas corpus,* the law has long been clear that the judge must grant a hearing, determine the facts of the case on such a hearing, and on the basis of the facts found make the proper disposition of the case. * * *
 * * * * *

 "The Supreme Court has in many other cases indicated that a petitioner is entitled to a hearing *on facts raised in his petition for habeas corpus* and that a lower court that disposes of such a petition without granting a hearing must be reversed. *E. g.,* Cochran v. Kansas, 1942, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453.
 * * * * *

 "The rule that a hearing is required *where a determinative issue of fact is presented by petition for habeas corpus* is in no way upset by the decision of this Court in Dorsey v. Gill, * * * there is nothing in that decision to indicate that the district court is relieved of the requirement of granting a hearing *where there is an issue of fact presented by the petition.* * * *
 * * * * *

 "* * * *Where the issue of present sanity is raised by the petition,* a hearing must be held on that issue. * * *"
 [Emphasis supplied throughout.]

2. This contention is shown by the following excerpts from appellant's brief:

 "* * * The petition plus the return to the order to show cause clearly posed a factual issue which should have been resolved by a hearing, with both sides given the opportunity of introducing evidence. * * *
 * * * * *

 "* * * This Court's discussion [in Dorsey v. Gill] * * * should not be construed as indicating that there is any discretion in the court as to whether or not to grant a hearing where, as in the

legally sufficient to show unlawful restraint clearly requires the judge to issue the writ itself or a show cause rule. But a question crucial in this case is, must a hearing be held on the factual allegations of an application standing alone, even though an untraversed return to the show cause rule shows, when considered with the application and relevant court records, that no genuine issues of fact are present? Appellant's counsel said he had prolonged his argument on the point that a hearing must be afforded on factual issues tendered by a petition for the writ, when considered alone, "in view of the fact that district courts have in other cases considered themselves as having some sort of discretion as to whether or not they will grant hearings, and in view of the ambiguous language of this Court in certain prior cases * * *."

The charge of ambiguity is not without foundation. There is some confusion and obiter dictum in judicial writing concerning habeas corpus, to which this court has contributed probably more than its share. This has resulted, I think, from conscientious efforts of courts to interpret governing statutes so as to preserve the traditional writ as the individual's effective protection against unlawful restraint, and at the same time to prevent its abuse by him who makes repeated applications upon substantially the same factual situation after previous hearing and denial. This is a balance difficult to achieve, especially when the perpetual petitioner is a mental patient whose renewed allegation of sanity may be true although in former applications it was untrue.

I turn to the governing statute to see whether it supports the contention of appellant's counsel that judges have no discretion about granting hearings for the de-

termination of factual issues raised by the application alone, but must grant such hearings if the facts pleaded therein, without more, amount as a matter of law to illegal detention.

It is important to note that we are now concerned with a new statute on habeas corpus which was enacted on June 25, 1948, and became effective on September 1 of that year.[3] It is not a question what the ancient practice was at common law nor what the practice was prior to the enactment of the present Code provisions. The question is what is required by the present statute.[4] In some respects at least the new legislation has made obsolete judicial opinions rendered before its enactment.

Upon receipt of an application for habeas corpus a district court must examine it,[5] I think with the presence and assistance of counsel, to determine whether "it appears *from the application* that the applicant or person detained" is entitled thereto. (Emphasis supplied.) Thus each application is subjected to a sort of automatic demurrer. If its allegations, considered without reference to any other document or source of material, are held to be insufficient as a matter of law to show illegal detention, the application will be dismissed. But if the applicant's allegations are legally sufficient to constitute such detention, the statute simply says the court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted".

It does not provide, as appellant would have it, that a hearing must be had on the issues of fact tendered by those allegations alone. Instead of doing that, § 2243 *requires* the filing of a pleading responsive to the application by saying that, when served with the writ or show cause order,

present case, *an examination of the petition and the return to the rule to show cause* clearly reveals that a determinative factual issue is posed. * * *
* * * * *
" * * * an error was committed in not granting a hearing on the issue of fact posed *by the petition and the return.* * * *" [Emphasis supplied.]

3. 62 Stat. 964 et seq., June 25, 1948, ch. 646, § 1, 28 U.S.C.A. 2241 et seq.

4. Walker v. Johnston, 1941, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L.Ed. 830.

5. Under the statute, a district court may not refuse to "entertain" an application presented to it. Only the Supreme Court, a justice thereof, or a circuit judge may refuse to do so.

350

the respondent "shall make a return certifying the true cause of the detention." With the issues thus formed, allegations of fact having been made by one party and denied or avoided by the other,[6] the statute says "a day shall be set for hearing".

Obviously, the hearing so contemplated is to enable the court to decide the issues of fact raised by the pleadings of the parties. It is equally obvious, although not spelled out in the statute, that, before proceeding into such a hearing, it is the duty of the court to examine the entire record, together with the records of relevant prior proceedings,[7] in the presence and with the aid of counsel, to decide the legal question whether there is in truth any genuine issue of fact to be tried. It would be idle and futile to go into a hearing concerning nonexisting factual issues.

At that stage of the proceeding, the statute requires that, if the application for the writ *and the return of the respondent* present issues of fact, the respondent must produce at the hearing the body of the applicant, and "The Court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." On the other hand, if the application for the writ and the return thereto present only issues of law, the applicant's presence at the hearing is not required. The court should then summarily determine the questions of law and "dispose of the matter as law and justice require."

The provisions of the 1948 statute summarized above seem to me to be free from ambiguity. They require us, I think, to reject appellant's argument that a court sitting in habeas corpus is bound to conduct a hearing on the factual allegations of an application for the writ merely because the application is legally sufficient on its face, in complete disregard of the responsive pleading and such background material as

may be available to be noticed judicially. But I have no difficulty in accepting appellant's alternative or additional argument, that a hearing must be held to resolve factual issues disclosed by *all* the pleadings, construed in connection with the court's own records of any prior proceedings brought by the same petitioner.

I am thus brought to a consideration of the sharply contested question whether in this case the petition for the writ and the return to the rule to show cause, examined in the light of the proceedings on Stewart's numerous earlier applications, presented any substantial issue of fact with respect to which the trial judge should have heard evidence. If there was such an issue, the court erred in discharging the show cause rule and dismissing the application for the writ; if no such issue was made, the court was correct in dismissing the application.

Appellant's counsel vigorously insists that the question of sanity was clearly presented. It was posed, he says, by the applicant's averment that his alleged mental incompetency "is false", and "that he is of sound mind as he knows right from wrong." Counsel finds in respondent's return nothing more than a denial of these allegations, and therefore sees the issue of present sanity clearly revealed. Appellee counters by saying the application, considered as a whole, does not plead a recovery of sanity but merely repeats the allegations of former petitions which had been decided against the appellant; and that, fairly construed, the application merely alleges that Stewart was fraudulently adjudged insane and that, as he never was of unsound mind, he is not now. The government contends, therefore, that no new issue of present sanity is shown.

In deciding a question such as this I think the trial judge is expressly authorized by § 2244[8] to exercise a sound dis-

6. The applicant may deny any of the facts set forth in the return or allege any other material facts, and may amend any suggestions which he has made against the return. § 2243.

7. In performing this duty the judge is not restricted to an examination of the application only, as of course he had been

in considering what we have called the automatic demurrer to the petition.

8. The text of § 2244 is as follows:
"No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States,

cretion. In construing the pleadings he should view them realistically in order to find the meaning fairly attributable to them. In doing so, the judge should not hold the petitioner to the niceties of technical pleading; but neither should he isolate from context and background certain of the applicant's averments in order to find in them a connotation authorizing a hearing concerning them, when such connotation is belied not only by the responsive pleading but also by the complete text of the application itself.

Stewart's allegation that he "is of sound mind as he knows right from wrong", relying as it does on the test usually employed in criminal cases, says no more than that he is sufficiently sane to be answerable for any criminal act. A person may have the ability to distinguish between right and wrong and so may be responsible for a crime which he commits and yet may have a condition of mind so impaired or deranged as to cause a deviation from normal conduct.[9] It may be conceded, therefore, for the purpose of the discussion, that Stewart knows right from wrong. The return to the rule alleges, however, that he is suffering from a paranoid type of psychosis; that is, that he is a paranoiac. The term paranoia is defined for the layman by Webster as "A chronic mental disorder characterized by systematized delusions of persecution and of one's own greatness, sometimes with hallucinations." The applicant did not traverse or otherwise plead to this allegation of the return, as he was privileged to do. His own affirmative allegation that he knows right from wrong is not in conflict with the charge that he suffers from paranoia. Moreover, certain allegations of the application tend to con-

firm the allegation that he is a paranoiac; he alleges, as he has done many times before, that he is a victim of persecution by conspirators who had him fraudulently adjudged insane in order to defraud him of his property. He repeats that the name under which he was committed is not his, that he was without benefit of counsel at the "false adjudication" and that he was not allowed to speak in his own behalf. These charges run through all his applications, and their repetition shows that when he filed the present application Stewart had the "systematized delusions of persecution" which characterize the chronic mental disorder known as paranoia.

Appellant's brief says that in his application he "claimed that he was sane and was no longer of unsound mind", and speaks of "opportunities to prove that he had recovered his sanity". The application contains no such allegation. It does not claim recovered sanity, but asserts he is not and has never been insane. It "contains nothing, directly or by inference, to indicate an alteration in appellant's mental state" since the last previous hearing; "and that much, at least, we think should be required." Ex parte Jordan, 1946, 81 U.S. App.D.C. 308, 158 F.2d 401.

The District Court's conclusion that in this proceeding there was no new ground for the writ which had not theretofore been presented and determined seems to us to have been based upon a practical and intelligent consideration of the pleadings. I think its judgment should be affirmed.

The full Court expresses its deep appreciation for the able representation of appellant by the late Mr. Mallory R. Smith, appointed by this Court in that behalf.

or of any State, if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore

presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry."

9. Compare Ashley v. Pescor, 8 Cir., 1945, 147 F.2d 318.