### VITALE v. HUNTER, Warden.
### No. 4647.

United States Court of Appeals.
Tenth Circuit.

Aug. 5, 1953.

Rehearing Denied Sept. 3, 1953.

Joseph M. Bonuso, Washington, D. C. (James H. Hope, Topeka, Kan., on the brief), for appellant.

Robert H. Bingham, Topeka, Kan. (Eugene W. Davis, Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Complaining of the restraint of his liberty by the respondent Warden, upon an alleged violation of the terms of a commuted sentence, the petitioner brought this action for a writ of habeas corpus to effect his release from Leavenworth Penitentiary. And, this appeal is from an order of the District Court of Kansas discharging the writ.

The petition for the writ alleged in substance that he was arrested and detained by the agents of the Immigration and Naturalization Service on January 31, 1952, at the International Airport, Los Angeles, California, while enroute from Tia Juana, Mexico, to Rome, Italy, via Los Angeles and New York, and while being transferred to a connecting and waiting airline for direct transit across the United States. He alleged that when he booked passage into and across the United States, he had in his possession a roundtrip ticket from Rome, Italy, to Tia Juana via Venezuela, but upon being informed of an agreement be-

tween the United States and the airline, under which aliens without a visa were permitted to travel through the United States under the supervision of the airline, and that such route was quicker and shorter, he purchased the ticket on which he was traveling at the time of his arrest; that except for his unlawful arrest and detention, he would have continued upon his journey through and across the United States to his home in Italy.

In a supporting memorandum, the petitioner stated that while serving sentences totaling fifteen years in the Federal Penitentiary, the President of the United States commuted the sentences on May 26, 1935, to expire immediately upon his delivery to the Immigration and Naturalization Service for deportation, provided that if he should thereafter "be found within the United States * * * otherwise than in the lawful custody of a federal officer, the commutation shall thereupon become null and void and of no effect, and he shall be returned to the penitentiary to complete the service of his sentences. * * *" The agreement between the United States and the airline, referred to in the petition and attached to the memorandum, provided in substance that alien passengers without visas were permitted to travel through the United States in Direct transit, with necessary servicing and connecting stops, to destinations outside the United States, provided that such passengers would be under the strict supervision of the airline, with binding obligation to vouchsafe their orderly passage in accordance with the agreement. The contention is that apprehension while in direct transit across the United States to a destination outside thereof under the strict supervision of the airline, is not being "found within the United States" as that term is used in the Presidential commutation of the sentences; that not having been found in the United States, his detention is unlawful and the writ should therefore issue.

In his response to the petition, the Warden admitted custody but denied its illegality. He alleged the attached judgments, commitments and the Presidential commutation. He attached and made specific reference to an indictment returned in the United States District Court for the Southern District of Florida in 1945, charging this petitioner with "unlawfully, willfully, knowingly and feloniously entering the United States of America from a foreign country" by means of a vessel which arrived at Miami, Dade County, Florida, on October 2, 1944; and further charging that at the time of such entry into the United States, the petitioner was an alien who had been previously arrested and deported from the United States on July 14, 1939, in pursuance of law. Further answering, it was alleged that a warrant for the arrest of petitioner on the Florida indictment has since been outstanding; that the petitioner was found and arrested by the immigration authorities at San Pedro, California, on January 31, 1952, pursuant to which he was in lawful custody of the respondent and that the writ should be discharged.

With convincing logic, we are urged to interpret the critical language "found within the United States" as meaning something more than "merely coming upon or discovering" the petitioner; that when considered in its proper context, the critical phrase connotes an entry at large to mix with the population, and given that meaning, the petitioner's apprehension at the airport cannot be said to be a violation of the terms of the commutation.

■ The construction of the critical phrase finds support in analogous cases. See Ex parte Chow Chok, C.C., 161 F. 627; McFarland v. United States, 6 Cir., 19 F.2d 805; Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. The condition in the commutation was well within the power of the sovereign, Kavalin v. White, 10 Cir., 44 F.2d 49, but, having imposed the condition, it does not become the sovereign or breed respect for law to indulge in "captious interpretations" of the terms thereof. We do not think, however, that our case turns on whether the petitioner was "found within the United States" while in direct transit from Tia Juana to Rome via Los Angeles and New York.

As we have seen, the response pleaded an indictment charging an unlawful entry into the United States in 1944 and an outstanding warrant for the arrest of the petitioner. The trial court's opinion indicates that at some intermediate stage of the proceedings, the government moved to reopen the case and offer positive proof in support of the factual allegation, and that some time during the proceedings called the petitioner to testify concerning the indictment, but that he refused to answer on the grounds that it might incriminate him.

While the trial court did not choose to rest its decision upon the fact of petitioner's illegal entry in 1944, we think it might well have done so. Under the common law, as adopted by statute, "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C.A. § 2248. No evidence is necessary to support the allegations of a return. It imports verity and must be taken as true, unless directly put in issue by the pleadings. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620; United States ex rel. D'Istria v. Day, C.C., 20 F.2d 302; Graham v. Carr, 9 Cir., 112 F.2d 908; United States ex rel. Catalano v. Shaughnessy, 2 Cir., 197 F.2d 65. An issue joined by the petition and the return must be determined upon proof. See Stewart v. Overholser, 87 U.S.App.D.C. 402, 186 F.2d 339. But here, the allegations with reference to the entry in 1944 stand untraversed and unrebutted, and we think they must be taken as true. This being so, the petitioner must be held to have entered the United States on October 2, 1944, and the commutation thereupon became null and void. His apprehension in Los Angeles in 1952, whether in obedience to the outstanding warrant or for some other reason, is immaterial to the question of his unlawful detention. The essential fact is that he was found within the United States in violation of the terms of his commutation and he cannot therefore complain of his return to the penitentiary to complete the service of his sentence.

There is nothing on the face of the record to indicate that the commutation was not revoked strictly in accordance with its terms. We will not assume that it was not revoked for proper cause in an appropriate proceedings. See Kavalin v. White, supra.

The judgment of the court is affirmed.