**OVERHOLSER v. BODDIE,**

No. 10473.

United States Court of Appeals
District of Columbia Circuit.

Argued May 26, 1950.

Decided July 10, 1950.

Mr. Joseph M. Howard, Asst. U. S. Atty., with whom Mr. George Morris Fay, U. S. Atty., was on the brief, for appellant.

Mr. P. Bateman Ennis, Washington, D. C., for appellee.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K.

MILLER, PRETTYMAN, PROCTOR, BAZELON, FAHY, and WASHINGTON, Circuit Judges.

### WILBUR K. MILLER, Circuit Judge.

This appeal presents an important question as to the power of the trial judge in habeas corpus cases. It is whether the statute which established a Commission on Mental Health for the District of Columbia made the traditional use of the writ no longer available to persons committed and confined for insanity who have recovered their reason.

Five years ago this court answered that question by holding in a series of three decisions[1] that the trial judge, although convinced of the sanity of such an applicant for the writ, does not have power to release him forthwith, but can do no more than order the original lunacy inquiry reopened for a new trial with the Commission on Mental Health participating. We are now asked to reconsider the question.

D. Farson Boddie was found to be of unsound mind on June 22, 1949, and was committed to St. Elizabeths Hospital. On September 28 following he applied for a writ of habeas corpus, alleging "that he is not presently suffering from any mental disturbance, mental defect or derangement, and is presently in a normal condition mentally and physically, and is entitled to his release." Upon issuance of the writ the respondent made a return that an examination of Boddie on September 28, 1949, "revealed the continued existence of mental symptoms which make advisable further supervision of petitioner * * *. It is the belief of physicians skilled in the diagnosis and treatment of mental disorders that D. Farson Boddie (Daniel F. Boddie) if released into his own custody at the present time may by reason of impaired judgment exhibit behavior detrimental to the public peace and welfare." District Judge Goldsborough heard testimony which included that of medical witnesses for both parties and that of the petitioner himself.

He found Boddie to be of sound mind and ordered his immediate release.

The government stated as the ground for this appeal that "The District Court should have directed that the commitment be reopened and should have referred the case to the Commission on Mental Health, instead of directing that appellee be released forthwith." This procedure was required, said the appellant, by the decisions of this court in Overholser v. Treibly, 1945, 79 U.S.App. D.C. 389, 147 F.2d 705; Dorsey v. Gill, 1945, 80 U.S.App.D.C. 9, 148 F.2d 857; Overholser v. De Marcos, 1945, 80 U.S.App. D.C. 91, 149 F.2d 23, cases which were called to the attention of the district judge and which he refused to follow. Appellee agreed the judge's action was contrary to the rule announced by this court in the three cases just mentioned but vigorously contended that their holding "amounts to judicial legislation" and should be overruled.

When this case was argued at the bar, government counsel appearing for the appellant stated, with commendable candor, that since their original brief had been prepared and filed they had concluded the judgment of the District Court from which they had appealed is correct. Thereafter, by leave of court, appellant's counsel filed a supplemental brief affirming their changed position and urging "that Overholser v. Treibly, Dorsey v. Gill, and Overholser v. De Marcos should be overruled insofar as they hold that a patient who satisfies the court in a habeas corpus hearing that he has recovered sanity is not entitled to immediate release."

Because of the importance of the question involved we sat *en banc* to hear and determine this appeal. For the same reason we shall examine applicable statutory provisions and re-examine our holdings in the previous decisions.

The Commission on Mental Health for the District of Columbia was established by an act of Congress June 8, 1938, which was amended August 9, 1939.[2] The amended act appears in Title 21 of the District of Columbia Code (1940), §§ 308–325, inclusive.

---

1. Overholser v. Treibly, Dorsey v. Gill, and Overholser v. De Marcos, infra.

2. 52 Stat. 625, ch. 326, 53 Stat. 1299, ch. 620.

The Commission is composed of two physicians and one attorney, the medical members being drawn from a panel of eight doctors so that no one of them need serve more than three months in each year. The District Court is required to refer to the Commission any petition for inquiry into the mental condition of a person alleged to be insane. The Commission is directed to examine the person charged, and to hear evidence with respect to his mental condition. If the Commission finds the person to be insane, it must apply to the court for a hearing which, if the defendant or anyone for him demand it, must be before a jury. If no demand be made for a jury trial, the judge shall determine the sanity or insanity of the person alleged to be insane and "may, in his discretion, require other proofs, in addition to the petition and report of the commission" and he may dismiss the petition notwithstanding the recommendation of the Commission.

The only function assigned to the Commission with respect to a patient who claims to have recovered his sanity is described in § 320. It is there provided that any person committed as insane, who has been released as improved, or paroled but not discharged as cured, and who has been on release or parole for six months or longer, may apply to the District Court for a hearing to determine his sanity and his right to restoration to the status of a person of sound mind. When a petition for such hearing is filed

"* * * It shall be the duty of the commission to make an examination of the records of Saint Elizabeths Hospital of the insane person as may be necessary to determine such questions, and if necessary have the person examined by the members of the staff of Saint Elizabeths Hospital and to make a report and recommendation to the court. In the event the commission shall find from the records and examination that the said person is of sound mind and shall recommend to the court the restoration of said person to the status of a person of sound mind such recommendation shall be sufficient to authorize the court to enter an order declaring such person to be restored to his or her former legal status as a person of sound mind. * * * Upon the filing by the commission of a report finding such person to be of unsound mind, the insane person shall have the right to a hearing by the court or by the court and a jury. * * * At such trial by the court or by the court and jury, an adjudication shall be made as to whether the person is of sound mind or is still of unsound mind."

Thus the statute expressly provides that the facilities of the Commission shall be utilized in a case where a patient who has been permissively at large for at least six months seeks judicial determination that sanity has been restored. Obviously such a person, not being in custody, could not apply for a writ of habeas corpus, so the statute does not purport to apply to habeas corpus or to give the Commission on Mental Health any part in the consideration of an application for the writ made by a confined mental patient. The statute is silent, moreover, as to the right of a confined patient to assert he has regained sanity and to ask release from custody because of his changed mental condition, although it extends that right to one not confined. Such silence recognizes the remedy of habeas corpus; and, as has been said, the Code provisions do not require the participation of the Commission in a hearing on an application for the writ by a confined patient. These omissions could hardly have been inadvertent and must be regarded, we think, as indicative of a congressional intent to avoid interference with established procedure in habeas corpus cases. The legislative failure to require Commission participation when the writ is applied for by a person in custody as insane becomes more significant when this language in § 325 is read:

"Nothing contained in sections 21–310 to 21–318, 21–320 to 21–325 shall deprive the alleged insane person of the benefit of existing remedies to secure his release or to prove his sanity, or of any other legal remedies he may have."

■ What were the remedies which an alleged insane person might have invoked to obtain his release or to prove his sanity prior to August 9, 1939, when all of these Code provisions except § 308 were enacted?

In Barry v. Hall, 1938, 68 App.D.C. 350, 357, 98 F.2d 222, 229, we said:

"* * * If an original confinement was invalid the writ [of habeas corpus] is a means of relief against that. If an original confinement was valid but the person confined has regained his sanity, the writ is used to seek discharge from confinement on that factual ground."

This was in accord with the general rule stated thus in 25 Am.Jur. 209:

"Where one in custody by reason of insanity is detained after he has recovered his sanity, such detention is illegal and may be ended by habeas corpus; and it is generally held that a person committed as insane has the right to have his sanity determined on habeas corpus."

The availability of habeas corpus to a confined patient who claims to have been restored to sanity, announced by us in Barry v. Hall before the enactment of the Code provisions regarding the Commission on Mental Health, was twice repeated by this court in decisions rendered after the enactment of the statute but before a different rule was announced in the Treibly, Dorsey and De Marcos opinions. Judge Stephens said in Ex parte Rosier, 1942, 76 U.S.App. D.C. 214, 223, 133 F.2d 316, 325:

"* * * detention, after recovery of sanity, of one who has been confined by reason of insanity, is illegal—liberty can as well be lost in a mental hospital as in a jail; and the proper remedy for determining the question of restoration of sanity is a habeas corpus proceeding. Barry v. Hall, 1938, 68 App.D.C. 350, 98 F.2d 322."

Again we said, in De Marcos v. Overholser, 1943, 78 U.S.App.D.C. 131, 132, 137 F.2d 698, 699, "Habeas corpus is a proper remedy to challenge the continued confinement of persons who claim to be restored to mental health."

We conclude, therefore, that prior to the enactment of the legislation involved here, the remedy of habeas corpus was available to any person confined as insane, by means of which he could attempt to obtain his release or prove his sanity. That being true, it is a remedy expressly reserved to him by § 325.

This conclusion leads us to the conviction that Congress, with conscious and deliberate care, omitted from this legislation any provision for compulsory Commission participation in habeas corpus cases brought to challenge the continued confinement of persons who claim to be restored to mental health, in order to avoid even the appearance of impairing the traditional judicial power, under the great and treasured writ, instantly to release one who is unlawfully restrained. It follows that the trial court still has the authority which it has always had to order the immediate discharge of a patient in St. Elizabeths Hospital if, after a hearing in habeas corpus, it be of the opinion that the patient is of sound mind. Instead of attempting to withdraw or curtail that authority, the statute under consideration expressly confirmed it. This is not to say the trial judge may not request the expert assistance of the Commission on Mental Health as he considers such cases, if that course be thought desirable;[3] but he is not required to do so.[4]

Insofar as Overholser v. Treibly, Dorsey v. Gill and Overholser v. De Marcos, supra,

---

**3.** This court said in De Marcos v. Overholser, 1943, 78 U.S.App.D.C. 131, 132–133, 137 F.2d 698, 699–700:
"There can be no question that it is desirable for the court to utilize the services of the Commission on Mental Health in a habeas corpus proceeding where the issue is the sanity of the petitioner. Habeas corpus is a proper remedy to challenge the continued confinement of persons who claim to be restored to mental health.
* * * * * *

"While the Act by its terms does not make it mandatory on the court to request a report from the Commission on Mental Health, nevertheless, having in view its history and purpose, we think it broad enough to justify our finding in its provisions a discretion in the court to require the Commission's expert assistance * * * "

**4.** Compare Appel v. Overholser, 1947, 82 U.S.App.D.C. 379, 164 F.2d 511.

hold, and the later case of Ex parte Jordan, 1946, 81 U.S.App.D.C. 308, 158 F.2d 401, intimates, that a trial judge may not decide in habeas corpus the issue of regained sanity and, though convinced the patient is of sound mind, may not release him, but must reopen the original lunacy inquiry and invoke the services of the Commission on Mental Health, they are overruled.

Affirmed.