David HARRISON, Petitioner,

v.

Dr. R. O. SETTLE, Warden, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

No. 10782.

United States District Court
W. D. Missouri, W. D.

May 16, 1957.

David Harrison, pro se.

Edward L. Scheufler, U. S. Atty., Joseph L. Flynn, Asst. U. S. Atty., Kansas City, Mo., for respondent.

RIDGE, District Judge.

Petitioner is now confined in the Medical Center for Federal Prisoners, at Springfield, Missouri, under commitment to the custody of the Attorney General entered pursuant to Sections 4244, 4246, 4247 and 4248, Title 18, U.S.C.A. The term of his commitment is "until the sanity or mental competency of petitioner shall be restored, or until his mental condition is so improved that if he be released he will not endanger the safety of the officers of the United States, or until suitable arrangements have been made for the custody and care of (petitioner) by the state of his residence, whichever shall first occur."

Petitioner, on December 4, 1952, was originally committed to the custody of the Attorney General on order of the United States District Court for the Eastern District of Virginia, under the provisions of Section 4246, supra, after finding duly made that he was then presently incompetent to stand trial on the charges pending against him—mailing a threatening letter to his half-brother. The term of that commitment was "until such time as he shall be mentally competent to stand trial or understand the proceedings against him or capable to assist in his defense." On September 14, 1954, after hearing on application for writ of habeas corpus filed by petitioner in this District Court, he was ordered returned to the Eastern District of Virginia on showing of probable cause that he was then mentally able to stand trial on the charges pending against him. After his return to the District Court for the Eastern District of Virginia another hearing was had pursuant to Section 4246, supra, whereat it was determined by that Court that the condition specified in Section 4247, supra, existed. As a consequence of that finding, petitioner was again duly committed to the custody of the Attorney General pursuant to Section 4248, Title 18, U.S.C.A., as above related. The legality of such commitment is not an issue here. Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412.

Petitioner has now filed an application for writ of habeas corpus in this District Court in which he "prays to have all restrictions removed from his right to enjoy a speedy and public trial" on the charges pending against him. In said application he alleges that he "believes himself to be competent to stand trial" and that "he has no desire to harm anyone." Liberally construed, said application proffers the issue of petitioner's present mental ability to stand trial on the charges pending against him, and "his eligibility for release" from the Medical Center as provided in Section 4248, supra. Although this District Court, under applicable law and Rules of Criminal Procedure, 18 U.S.C.A., may not adjudicate the first above issue (Higgins v. McGrath, D.C., 98 F.Supp. 670), we are duty-bound to hear petitioner out on the latter issue. Consequently, a show cause order was issued herein, to which respondent made answer in due course. It appearing from the "Classification Study" and "Special Progress Reports" made by the Neuro-Psychiatric Staff of the Medical Center, attached as exhibits to the answer to show cause, that petitioner was "correctly orientated and his memory intact" and that his mental condition had improved during the four and one-half years he has been in the custody of the Attorney General awaiting trial, a hearing was directed to be held on petitioner's right to a writ of habeas corpus. At said hearing petitioner appeared *pro se*. Respondent was duly represented by a member of the Psychiatric Staff of the Medical Center.

For brevity's sake, we shall not detail all the evidence adduced at such hearing. It is sufficient to say that in the opinion of this Court petitioner at the time of such hearing was reasonably disposed to his court appearance, emotionally and temperamentally. Petitioner established to the satisfaction of this Court that he was then orientated as to time, place, persons and things; that he has a vivid memory of the circumstances under which he wrote a threatening letter to his half-brother, and that he has a sufficient understanding concerning the circumstances surrounding that matter to verbalize the same to any counsel who might undertake his defense. However, at said hearing it further appeared from a specialized psychiatric viewpoint that petitioner "remained psychotic and incompetent" and that he is to be considered permanently insane, and that, in the opinion of the NP Staff of the Medical Center, petitioner "should be referred to the state of his legal residence for further hospitalization." As we glean from the special progress reports of the NP Staff and the evidence adduced at said hearing, this last-mentioned recommendation is tantamount to a psychiatric finding that petitioner is no longer a danger to officers of the United States, but, "for all practical purposes is to be considered permanently insane." Because of the inconclusive character of the evidence adduced as to the potential danger to officers of the United States, we directed that said hearing be continued for a reasonable period of time to afford the NP Staff of the Medical Center an opportunity to reconsider petitioner's status, particularly from the standpoint of petitioner's potential danger to officers of the United States, if he was released from the Medical Center.

In a routine review of petitioner's status in the Medical Center by the NP Staff of that institution on 5–2–57, reported to this Court by way of "Special Progress Report," it is stated:

"Previously, Harrison has been considered legally incompetent. His diagnosis is schizophrenic reaction, paranoid type. The subject was given psychological tests on 4–8–57 which revealed that his mental condition has improved, although the tests disclose severe emotional imbalance and impaired judgment. His behavior on the ward has been marked by wide mood swings with extreme volubility and pressure of ideas and of speech. He has been on tranquilizing drugs continuously since November, 1956.

"At the present interview the subject was rational, pleasant, voluble, and betrayed marked immaturity and some impairment of judgment. It was the impression of the Staff that he is still psychotic and delusional but has reconstituted sufficiently to conceal the evidence of mental disturbance sufficiently to appear almost normal. He read a letter from his brother which he stated that clarified for him the question of his nationality. He feels that his relationship with his brother will improve in the future.

"Recommendations: The Staff agrees this patient must be considered mentally ill and psychotic but understands the nature of the charges against him and can assist in his defense. In the opinion of the Staff, Harrison does not appear to represent a danger to others at this time."

As a consequence thereof:

"The classification committee recommended that this case be referred to the court, inasuch as the NP Staff agrees that this patient must be considered mentally ill and psychotic, but understands the nature of the charges against him, and can assist in his defense, and that at the present time does not appear to represent a danger to others."

■ In light of the findings and recommendation so made by the NP Staff of the Medical Center, it appears that the factual premise of the order of commitment, by virtue of which petitioner is presently being held, has now been dis-

pelled, and that said order is presently without any legal premise to sustain the further detention of petitioner thereunder. When a person charged with a federal offense is committed, before trial thereon, pursuant to Sections 4246–4248, supra, the only legal justification for his detention is the continued existence of the factual premise stated in the order of his commitment: i. e. that he continues to be mentally incompetent from a legal standpoint, as distinguished from specialized psychiatric considerations, to stand trial; and being so found he would probably endanger the safety of the officers, the property, or other interests of the United States, if released. We need not here dissertate upon the legal procedure to be followed where one charged with a federal offense appears to have been insane at the time of the commission thereof and continues to be mentally incompetent to stand trial thereon and who might be found *not* dangerous to the interests of the United States. For present considerations, it is sufficient to say that when the factual premise of a commitment under Sections 4246–4248, supra, no longer exists, then, regardless of the mental condition of the person committed thereunder, such as petitioner, he cannot, under the Constitution of the United States, or within due process of the criminal procedure established by the Congress in enactment of the said sections, be further retained in the custody of the Attorney General thereunder. Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412, affirmed 8 Cir., 219 F.2d 376; Higgins v. McGrath, D.C., 98 F.Supp. 670; Kitchens v. Steele, D.C., 112 F.Supp. 383. In other words, the fact that petitioner here remains psychotic and has been found by the NP Staff, supra, to be schizophrenic is not sufficient, standing alone, from a consideration of legal standards, cause for his continued detention in the Medical Center. When it is established, as here, that petitioner is orientated in all spheres; that he has understanding of the charge pending against him; that he can verbalize with counsel concerning the circumstances that led up to said charge; and, that he has a realization that he is to be prosecuted in a court of justice for such criminal violation of the law; then, regardless of his other mental condition, he must be immediately returned to his committing court for trial on the charge pending against him. And, when it is established that a person who stands committed to the custody of the Attorney General, such as petitioner, "does not appear to represent a danger to others" all lawful authority under the Constitution of the United States and the statutory scheme enacted by the Congress under Sections 4246–4248, supra, is exhausted and he is entitled to have his right to release therefrom determined by way of habeas corpus, as petitioner here does. Overholser v. Boddie, 87 U.S.App.D.C. 186, 184 F.2d 240, 21 A.L.R.2d 999; Greenwood v. United States, supra.

■ It appears to this Court in the instant proceeding that perhaps some consideration has been taken of the formula of the "M'Naghten Rule," as carried into federal criminal law by Davis v. United States, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750, and the holding of the Court of Appeals for the District of Columbia, as expounded in Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (as to the applicability in federal criminal procedure, and difference between the rules of law enunciated in the above decisions, see Judge Barnes' scholarly opinion in Sauer v. United States, 9 Cir., 241 F.2d 640); and that such consideration may have had some influence on petitioner's confinement in the Medical Center, awaiting trial, for over four and one-half years. Such is only an inference to be gleaned from the instant record. Because that matter is not here clearly established as a fact, we shall not elaborate thereon, but reserve the same for some future comment. It is sufficient to here say that the inquiry into the mental condition of petitioner to stand trial, or that he may, or may not, endanger the officers, the property, or other interests of the United States if he is presently re-

leased, has nothing to do with the question of whether petitioner was, or was not, of unsound mind at the time he allegedly committed the act with which he is charged. The inquiry into the mental competency of a person to stand trial and assist in his defense, or whether he may be safely permitted to go at large, is not the same as the question of his criminal responsibility; and, consideration of the latter proposition should not be taken into account in any determination of the former, either from a legal standpoint, or from specialized psychiatric evaluation.

In light of the showing here made by petitioner and the record before us, respondent is directed, with all due haste, to return petitioner to the jurisdiction of his committing court, and there release him from further detention under the present order of commitment by virtue of which he has been held; and report to this Court the manner of his compliance herewith.

It is so ordered.