Oswald J. HAYWARD, Petitioner,

v.

Winifred OVERHOLSER, Supt. St. Elizabeth's Hospital, Respondent.

H. C. No. 226-60.

United States District Court
District of Columbia.

Dec. 20, 1960.

John C. Poole, Washington, D. C., for petitioner.

Oscar Altshuler, Asst. U. S. Atty., Washington, D. C., for respondent.

HART, District Judge.

Oswald J. Hayward was indicted in 1959 for forging and uttering. Upon motion of his counsel he was examined at St. Elizabeth's Hospital in October, 1959, and found incompetent to stand trial. In June of 1960 he was certified as competent to assist in his defense and was ordered to trial in the District Court. Hayward waived his right to trial by jury and interposed the defense of insanity. The criminal jacket [1] indicates

1. U. S. v. Hayward, Cr. No. 497-59.

that to support this defense he was allowed to subpoena at the expense of the United States, two psychiatrists from D. C. General Hospital and four psychiatrists from St. Elizabeth's. Trial was held before Judge McLaughlin on July 5, 1960, and Hayward was found not guilty by reason of insanity. He was thereupon committed to St. Elizabeth's Hospital under the provisions of Section 301(d) of Title 24, D.C.Code (Supp. VIII, 1960).

On October 26, 1960, less than three months after his hospitalization, Hayward was permitted to file his first application for a Writ of Habeas Corpus. In substance, he alleged that he was receiving no treatment at St. Elizabeth's Hospital. From that allegation he concluded that he required no further institutional care and requested this Court to order at least his conditional release. The Writ was issued in due course and able counsel was appointed to represent petitioner.

The hearing on the Writ came before me on November 14, 1960. Prior to offering any evidence, petitioner's counsel orally requested that this Court appoint an independent psychiatrist to examine petitioner and to report to the Court with reference to his mental condition. Counsel further requested that the Court not rule on the motion until the end of the hearing. At that time I noted the legal insufficiency of petitioner's pro se petition and denied the motion for independent medical evaluation.

Petitioner then took the stand. During the course of direct examination[2] it developed that petitioner's main concern was the hospital's failure to accord him individual psychotherapy. A substantial part of his testimony was directed to the proposition that the Court's supervision of the criminally insane prevented their receiving proper treatment at the hospital. Petitioner admitted, however, that he received the general therapeutic treatment available to all patients in the hospital. In his testimony he indicated his respect for the medical opinion of the hospital staff.[3] In response to a question by his counsel, he specifically refused to charge any member of the staff with arbitrary and capricious conduct.[4]

The Government then called to the stand Dr. David Owens, a psychiatrist on the staff of St. Elizabeth's Hospital.[5] Dr. Owens testified that petitioner was still suffering from a schizophrenic reaction of the chronic undifferentiated type.[6] The Doctor further indicated that the most important part of the treatment in petitioner's case was his participation in the general therapeutic program available at the hospital.

After hearing this testimony, the Court dismissed the petition and remanded the petitioner to the custody of the respondent.

On November 28, 1960, I received a letter from petitioner through Chief Judge Pine. In his communication petitioner refers to a newspaper report of the recent decision of our Court of Appeals in Curry v. Overholser.[7] Petitioner suggests that by reason of that decision he is entitled to an independent psychiatric evaluation of his condition. He requests that the Habeas Corpus proceedings be reopened and that an independent psychiatrist be appointed to examine him.[8]

2. Transcript, pages 5–9.

3. Transcript, page 7.

4. Transcript, page 8.

5. This same Doctor was subpoenaed by the petitioner as a defense witness at the time of his trial. Apparently petitioner did not question the Doctor's diagnosis at that time.

6. Dr. Owens explained in detail the manifestations of this illness in petitioner.

Even while undergoing treatment petitioner and several other inmates attempted to defraud a Stamp Company of over $3000 under the guise of developing recreational activity.

7. D.C.Cir., 1960, 287 F.2d 137.

8. As an alternative petitioner requests leave to appeal. He is, of course, free to appeal by paying the proper fees and costs. I cannot, however, consider his

The language of the Curry case to which petitioner apparently has reference and upon which he predicates his right to independent psychiatric examination is as follows:

"Appellant, an indigent, argues that he is handicapped * * * by not having available to him private psychiatrists to testify as to his present mental condition. We recognize this difficulty and dealt with it, in De Marcos v. Overholser, 78 U.S. App.D.C. 131, 137 F.2d 698, certiorari denied 1943, 320 U.S. 785, 64 S.Ct. 157, 88 L.Ed. 472, and Overholser v. De Marcos, 80 U.S.App.D. C. 91, 149 F.2d 23, certiorari denied 1945, 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002. In these cases, we said that 'an inmate of St. Elizabeth's Hospital petitioning for habeas corpus might demand the expert testimony of members of the Commission on Mental Health, or that the Court on its own motion might require it. This gives any inmate of St. Elizabeth's the protection of a diagnosis by independent experts.' See 80 U. S.App.D.C. at page 93, 149 F.2d at page 25. We think this relief is available to all indigent inmates of the hospital including those committed under Section 24–301." [9]

 The above quoted language, considered in the light of petitioner's recent demand that his habeas corpus proceeding be reopened and that he be provided a diagnosis by independent experts, requires that I decide whether the Curry case makes mandatory the utilization of independent psychiatric testimony [10] whenever such testimony is demanded by an indigent inmate of St. Elizabeth's Hospital seeking to establish his eligibility for release under the Statute.

In my opinion the Curry case does no more than reaffirm the trial court's discretion in seeking the aid of the members of the Mental Health Commission whenever the circumstances of a particular case indicate that independent psychiatric evaulation is necessary. In the first De Marcos case the Court of Appeals clearly recognized " * * * a discretion in the court to require the Commission's expert assistance in a case in which, by reason of his poverty, a petitioner is unable to secure the testimony of other professional witnesses." [11] No decision that I have found indicates that the Trial Court's discretion has been limited in any way. Rather, those decisions interpreting the original De Marcos case [12] reaffirm the Court's discretion in the matter. I see nothing in the Curry case which now requires a holding to the contrary.

In my opinion the appointment of a member of the Mental Health Commission to conduct a mental examination of an applicant for habeas corpus relief is required only when testimony by members of the Hospital Staff leaves some doubt in the mind of the Court as to petitioner's eligibility for release. Such independent testimony might also be required upon a showing that the staff at St. Elizabeth's are incompetent to render a proper opinion in a particular case. In

request as a motion to appeal without prepayment of costs because petitioner has failed to submit an affidavit of poverty with his motion.

9. 287 F.2d at page 137.

10. It is clear that this Court possesses no authority to appoint a private psychiatrist to examine petitioner and testify at his Habeas Corpus hearing. See De Marcos v. Overholser, 78 U.S.App.D.C. 131, 132, 137 F.2d 698, 699. In substance then any appointment of independent medical experts would have to be made from among those members of the

Medical profession who was subject to the authority of the Court by reason of their membership on the Commission for Mental Health.

11. 78 U.S.App.D.C. at page 133, 137 F. 2d at page 700.

12. See Overholser v. Boddie, 87 U.S.App. D.C. 186, 184 F.2d 240, 21 A.L.R.2d 999; Appel v. Overholser, 82 U.S.App.D.C. 379, 164 F.2d 511; Overholser v. De Marcos, 80 U.S.App.D.C. 91, 149 F.2d 23; Overholser v. Treibly, 79 U.S.App. D.C. 389, 147 F.2d 705.

the absence of such a showing, however, this Court, I believe, is justified in relying on the presumption that " * * * the staff of St. Elizabeth's Hospital are competent and that their opinion, based on observation and treatment, is correct." [13] Indeed, in so doing, we do no more than does the defendant in a criminal case when he relies on these same Doctors to establish his defense of insanity.

Further, as a practical matter, mandatory examination of applicants for habeas corpus relief by members of the Commission on Mental Health would impose an intolerable burden upon the Mental Health Commission and upon the administration of our insanity laws. The Court of Appeals itself recognized this problem as far back as the second De Marcos case.[14] One need only review the Habeas Corpus and Mental Health dockets to realize how immense the problems in this field have become since that time. To require the assistance of members of the Commission on Mental Health in almost every Habeas Corpus proceeding might well paralyze the effective operation of that body. Such a result would follow were I to construe the Curry case as petitioner suggests.

Under the facts of the instant case, it is clear that petitioner was not entitled to an independent examination by a member of the Mental Health Commission. His pro se application for the Writ contained nothing which would justify such an examination prior to hearing. The hearing itself and testimony from petitioner's own lips clearly indicates that independent examination was unnecessary. Neither petitioner nor his counsel alleged that any member of the Staff of St. Elizabeth's Hospital was arbitrary or capricious. Petitioner, in fact, generally agreed with the testimony of Dr. Owens. In such circumstances, independent psychiatric examination would have served no useful purpose. Accordingly, petitioner's Motion to reopen the Habeas Corpus proceeding and his Motion for the appointment of an independent psychiatric expert are denied.

---

13. Overholser v. De Marcos, 80 U.S.App. D.C. at page 92, 149 F.2d at page 24.

14. 80 U.S.App.D.C. at page 93, 149 F.2d at page 25.