In re Harriet DuBOIS.

M. H. No. 1158–58.

United States District Court
District of Columbia.

Aug. 6, 1962.

Macleay, Lynch, Channing & Bernhard, Washington, D. C. (Theodore E. Lombard, Washington, D. C.), for petitioner.

Frederick A. Thuee, Chairman, District of Columbia Commission on Mental Health, Washington, D. C., for respondent.

TAMM, District Judge.

This case is before the Court on a petition for the restoration of the petitioner to the legal status of a person of sound mind. The facts of the case are briefly summarized as follows:

On August 7, 1958, the petitioner, Harriet DuBois, was adjudicated of unsound mind by this Court and was committed to St. Elizabeths Hospital in this city. About two weeks after her commitment, petitioner departed from the hospital and subsequently, on September 5, 1958, was discharged from the rolls as an eloped patient. It appears that following her departure from the hospital, Mrs. DuBois returned to her home in Illinois where she remained until the present petition was filed. During the approximately four years which have elapsed since the 1958 commitment, petitioner has made a satisfactory social recovery from her psychotic illness. The fact that she can now be considered to be of sound mind and capable of managing herself and her affairs is undisputed.

The Court's attention has been called, however, to the provisions of Title 21, Section 320 of the District of Columbia Code (1961 ed.). This section provides for an examination and hearing by the Mental Health Commission only in the case where a patient committed to a hospital by an order of this Court has been released from the hospital as improved or who has been voluntarily paroled from the hospital after an absence of six months. The patient in her petition and in her testimony before the Mental

Health Commission admits that she involuntarily departed from the hospital. She makes no contention that she was either voluntarily released or paroled from the hospital. Upon these facts it appears that the provisions of Section 320 relating to restoration of status are inapplicable to the petitioner in the instant case.

The provisions of Section 320 are not, however, exclusive remedies in such cases. When Congress created the Mental Health Commission in 1938, it gave certain statutory rights previously non-existent to persons alleged to be insane. Prior to the enactment of the Act, such persons had few such rights under the statutes and the common law in regard to the restoration of their status. Their rights in most cases were dependent almost wholly upon the discretion of the Court.

In the case of In re Blewitt (1893) 138 N.Y. 148, 33 N.E. 820, the Court said:

"The presiding judge *may* cause the lunatic to be brought before him for his personal examination. He *may* appoint an expert to examine him, and report as to his condition. He *may* cause the witnesses to be brought before him, and examined in open court, or he *may* refer the matter to a referee to take the evidence of the witnesses, and make his report thereon, or he *may* hear the application upon affidavits if he is satisfied to dispose of it in that way. He *may* also, in the exercise of his discretion * * * order the question as to the sanity of the alleged lunatic to be tried before a jury. But the manner in which he will ascertain whether the alleged lunatic has become sane and competent to take care of himself and his property rests in his *discretion*." (Emphasis supplied).

As to a more complete discussion of the rights of such persons, especially as to the right of trial by jury, see annotation, 91 A.L.R. 88.

In the light of the above, it becomes obvious that the intent of Congress in enacting Section 320 was not to limit the remedies of the alleged insane person; rather it was to create a new, well-defined area of rights whereby a certain qualified group of patients was entitled, as a matter of right, to a hearing and a jury trial if necessary, to determine whether such persons had regained their sanity. This interpretation is further verified by the provisions of Section 325 of Title 21, which states plainly that "Nothing contained in sections * * * 21–320 * * * shall deprive the alleged insane persons of the benefit of existing remedies to secure his release or to prove his sanity, or of any other legal remedies he may have."

As petitioner in the present case is neither on conditional release from St. Elizabeths nor on parole, she clearly has no statutory "right" within the provisions of Section 320 to a hearing before the Mental Health Commission, or for that matter, to any other of the remedies provided by this section. Her remedy, if any, must be within the "existing remedies" provision of Section 325. Under the rule announced in the case of Overholser v. Boddie, 87 U.S.App.D.C. 186, 184 F.2d 240, 21 A.L.R.2d 999, petitioner would have a right to bring a writ of habeas corpus if she were confined illegally within the hospital. The right to bring the writ would include a right to a determination of her competency; but petitioner's procedural rights under the writ would be controlled by the "existing" practices. That a patient bringing a writ of habeas corpus has no "right", for example, to a hearing before the Mental Health Commission was made abundantly clear in the Boddie case:

"The only function assigned to the Commission with respect to a patient who claims to have recovered his sanity is described in § 320. It is there provided that any person committed as insane, who has been released as improved, or paroled but not discharged as cured, and who has been on release or parole for six months or longer, may apply to the District Court for a hearing to de-

termine his sanity and his right to restoration to the status of a person of sound mind."

The Boddie case recognizes that Section 320 was meant to apply only to patients on conditional release or parole. The petitioner in the Boddie case was actually in custody and had brought a writ of habeas corpus. At page 188, 184 F.2d at page 242, the Court asks:

"What were the remedies which an alleged insane person might have invoked to obtain his release or to prove his sanity prior to August 9, 1939, when all of these Code provisions * * * were enacted? In Barry v. Hall, 1938, 68 App.D.C. 350, 357, 98 F.2d 222, 229, we said: ' * * * If an original confinement was valid but the person *confined* has regained his sanity, the writ is used to seek discharge from confinement on that factual ground.' This was in accord with the general rule stated thus in 25 Am.Jur. 209: 'Where one in *custody* by reason of insanity is detained after he has recovered his sanity, such detention is illegal and may be ended by habeas corpus; and it is generally held that a person committed as insane has the right to have his sanity determined on habeas corpus.' * * * We conclude, therefore, that prior to the enactment of the legislation involved here, the remedy of habeas corpus was available to any person *confined* as insane, by means of which he could attempt to obtain his release or prove his sanity. That being true, it is a remedy expressly reserved to him by § 325." (emphasis supplied).

Petitioner in the instant case is not in custody, so the writ of habeas corpus provides no redress. Due to the fact that she is a nonresident of the District of Columbia who has been removed from the hospital rolls, she cannot re-enter the hospital voluntarily. Further, as she is completely recovered she cannot be involuntarily committed. Perhaps this is well, because it would seem a mockery of justice to require a former patient to submit to commitment merely to give her the right to bring a habeas corpus action to restore her legal status as a sane person.

This case appears to be one of first impression. Of course, this is not surprising in light of the almost complete remedies afforded by the statute and the writ of habeas corpus. Even in the rare cases of patients who elope from St. Elizabeths Hospital and regain their sanity while not in custody, there is almost always jurisdiction in the hospital to return the patient and place him on conditional release and recommend the restoration of his status. If such a patient is returned to the hospital and not released, the patient is fully guarded in his rights by the writ of habeas corpus.

There can be no question that the provisions of Section 325 do, in fact, apply to Mrs. DuBois, petitioner in the instant case. She is an "alleged insane person" within the meaning of the Code, for she was so adjudged by this Court in 1958. She is, therefore, entitled to "the benefit of existing remedies * * * to prove [her] sanity." What are these "existing remedies?"

Outside of the rights conferred by the writ of habeas corpus, the right of an "alleged insane person" to request the restoration of sanity was largely, as we have seen above, within the discretion of the Court. While this discretion was previously extremely broad, it has been greatly narrowed by the provisions of the statute. No court should exercise such discretionary powers, it would seem, unless there was clearly no remedy either under the statute or in the writ of habeas corpus, which is the situation in the present case. This case is, therefore, an appropriate one for the exercise of the broad equitable powers inherent in this Court.

The Mental Health Commission has made inquiry into this case and has examined the petitioner, even though such a procedure is not required within the statute in such a case and petitioner has no statutory "right" to such an examination. The Commission in this re-

gard has been of great assistance to the Court and is to be commended for its activities.

Having carefully examined the record in this case and the findings of the Commission and the petitioner's own psychiatrist, the Court is of the opinion that petitioner has fully regained her sanity and should be restored to the status of a sane person.

An appropriate order may be presented.