**John C. RIVETT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 374.**

Supreme Court of Alaska.

Sept. 17, 1964.

E. E. Bailey, Ketchikan, for appellant.

Thomas E. Fenton, Dist. Atty., Ketchikan, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

On August 9, 1962, John C. Rivett, as defendant in the superior court, pleaded guilty to charges of (1) being in possession of a concealable firearm as a convicted felon, (2) theft of two checks, and (3) two counts of forgery of these checks. Five days later he was given certain concurrent sentences requiring him to spend a total of five years in prison. He now attacks the sentences on a multitude of grounds, including charges of illegal search and seizure, involuntary confession, and confession rendered while under the effects of drugs. Additional details pertinent to the appeal are as follows:

Acting upon information that a person named John Rivett had stolen some checks and was about to leave Alaska by airplane from Ketchikan, two state police officers on August 1, 1962, proceeded to the Ketchikan Airport—actually a dock for float planes— where the defendant was pointed out to

them. They identified themselves to the defendant as police officers and asked him his name. At first he claimed to be M. E. Brown and produced his airplane ticket issued to that name; but, upon being asked for further identification, he admitted that his name was Rivett.

Without placing the defendant under arrest, the officers told him that they would like to talk to him further and asked him to go to the state police office with them. He agreed to go and after a two-hour interview at the office he was placed under arrest for larceny and "booked" at the jail on that charge. One of the police officers then proceeded to the magistrate's office and signed a complaint against the defendant for larceny.

After the police officers had taken the defendant to their office they called the airlines and requested that the defendant's baggage be taken off the flight. Later in the day, and subsequent to the defendant's arrest, the officers picked up the baggage—a suitcase—and took it to their office, where they searched it and found a .38 revolver and a hypodermic needle. The defendant admitted that both articles belonged to him.

There was evidently a second complaint filed against the defendant, for on August 2, 1962, he was arraigned before the magistrate at Ketchikan on two separate complaints, one charging him with grand theft of two checks and the other of being a convicted felon in possession of a concealable .38 revolver. The defendant was advised of his rights by the magistrate and stated that he wanted advice of counsel, whereupon the

magistrate adjourned court. The proceedings in the magistrate court were later dismissed in favor of action in the superior court.

It appears that defendant obtained one Floyd Davidson to act as his attorney, as that person visited the defendant at the jail on August 6 and on August 9 informed the superior court that he was representing the defendant. On this latter date the defendant appeared in the superior court with his attorney, waived prosecution by indictment and consented that the proceedings against him be by information. An information charging the crimes mentioned in the first paragraph of this opinion was filed forthwith. The defendant waived the reading of the information and further time to plead and personally entered his plea of guilty to each of the four counts of the information. Four days later he was sentenced to five years of imprisonment on each of the forgery counts and one year on each of the two other counts, all sentences to run concurrently.

On April 2, 1963, the defendant moved in the superior court for permission to proceed in forma pauperis, with court appointed counsel, and for a writ of habeas corpus. The motion for a writ of habeas corpus was denied on April 11 and the defendant appealed to this court from the order denying him the writ. We remanded the case to the superior court with directions to grant the defendant a hearing "and otherwise proceed in accordance with the provisions of Criminal Rules 35(b) and 32(d)."[1] We also granted the defendant's motion to pro-

---

1. The two criminal rules mentioned in the text above provide as follows:

   Rule 32(d). "A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea."

   Rule 35(b) "A prisoner in custody under sentence of the District Court for the District (Territory) of Alaska or the superior court of the State of Alaska claiming the right to be released upon

   the ground that the sentence was imposed in violation of the Constitution or laws of the United States or the Constitution or laws of Alaska, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence or its successor, to vacate, set aside or correct the sentence.

   "A motion for such relief may be made at any time.

   "Unless the motion and the files and records of the case conclusively show

ceed in forma pauperis and directed the lower court to appoint counsel to represent him.

In compliance with our directions, the superior court held a hearing for the defendant on August 16, 1963, and denied the motion for habeas corpus. The defendant was not personally present at the hearing but was represented by his court appointed attorney, E. E. Bailey. In its findings of fact the trial court stated that the search in question was conducted after the arrest and incident thereto, that no force or coercion was used to obtain a confession from the defendant or his plea of guilty; that the defendant was not denied the right to counsel; and that he was not under the effect of drugs while in jail. The court also found that there had been no trial on the charges contained in the information filed against the defendant, for the reason that he had waived prosecution by indictment and consented to prosecution by information and then entered a voluntary plea of guilty. On September 3, 1963, the defendant filed a motion with this court to appeal in forma pauperis. We granted the motion and appointed the same Mr. Bailey to represent the defendant on appeal.

The defendant claims that the trial court erred in finding that no force or coercion was used to get a confession from him and

alleges that "only by the exertion of improper influences" were the police officers able to get him "to admit adequate facts on which they could and did predicate an arrest." He does not state what those "improper influences" may have been other than to say that the police officers took him from the airport to their office and questioned him for two hours and then placed him under arrest because of what he had revealed to them.

We have searched the record ourselves and failed to find therein any evidence of threats, force, duress or promises of immunity. The two officers who interrogated the defendant before the arrest were called as witnesses by the defendant at the habeas corpus proceedings in the superior court. They both testified that the defendant accompanied them voluntarily to their office and was questioned there quite informally and without the employment by them of any threats, force or promises.

In his motion to the superior court for a writ of habeas corpus the defendant does allege that he was abusively handled and coerced and asked leading questions by the police officers prior to his arrest and that he was thereafter, while in jail, "coaxed, coerced, promised favors and leniency, threatened, harrassed, brow beaten and intimidated all to the end, that PETITION-

that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court, or its successor, shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the supreme court from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this subdivision, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or its successor, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

ER [defendant] change his pleas from Not Guilty to Guilty." These are very general charges and easily made; but they are without factual support in the record. They are specifically denied by persons who had contact with the defendant during his incarceration. Significantly, too, the defendant made no complaint of any abuse or mistreatment such as he urges here until more than seven months after his conviction.

■ Under these circumstances we cannot say that the trial court erred in its finding that no force or coercion had been used to obtain a confession from the defendant. Even if the confession had been illegally obtained, its use in this case would not have constituted such manifest injustice as to require the court to permit the defendant to withdraw his plea of guilty under Criminal Rule 32(d). The day he appeared in the superior court, with his attorney, and waived prosecution by indictment he could have stood trial on a plea of not guilty and moved to suppress the confession as evidence.[2] Instead he chose to waive the defense available to him and plead guilty. He cannot now collaterally attack the judgment of conviction.[3]

The defendant also specifies as error the trial court's finding that the search of the defendant's suitcase was legal. His contention seems to be that the search was conducted without a search warrant and not incidental to an arrest and that the revolver seized in the search was, therefore, taken illegally and could not be used as the basis for the count in the indictment charging possession of a concealable firearm by a convicted felon.

■ Here again, assuming without deciding that the search was illegal, a motion for the return of the gun and to suppress the evidence should have been made before trial or hearing, according to the provisions of Criminal Rule 37(c), "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."[4] The defendant does not claim that he had no opportunity to interpose the motion or that he was not aware of the grounds of the motion; so he has no cause now to complain of the use made of the gun by the prosecution. In fact, he waived his right to attack the search and seizure when he chose to plead guilty to the count based

2. Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, 876, cert. denied, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003 (1945), overruled on another point, Overholser v. Boddie, 87 U.S.App.D.C. 186, 184 F.2d 240, 21 A.L.R.2d 999 (1950); see Ciccarelli v. People, 147 Colo. 413, 364 P.2d 368, 373 (1961).

3. In Watts v. United States, 107 U.S.App. D.C. 367, 278 F.2d 247 (1960), the defendant confessed and pleaded guilty when faced with the confession of his confederate. After sentencing the defendant sought to withdraw his plea of guilty under Rule 32(d) of the Federal Rules of Criminal Procedure and 28 U.S.C.A. § 2255 (similar to our Criminal Rules 32(d) and 35(b), respectively), claiming that this was necessary to correct manifest injustice, since his plea of guilty was forced by the confession of his comrade. The court held otherwise, stating at page 370 of 107 U.S. App.D.C., at page 250, of 278 F.2d that the proper procedure in such a situation is for the defendant to move to suppress the confession. "But if, having these effective defenses available, and, protected by counsel, as here, he is found to have competently and intelligently entered his plea, that plea constitutes the highest form of voluntary choice known to the law—confession in open court. His election to forego available defenses precludes collateral attack."

4. See Goss v. State, 369 P.2d 884, at pages 886–887 (Alaska), cert. denied, 371 U.S. 843, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962), in which this court held that where the defendant failed to move for return of his property under Criminal Rule 37(c), the admission in evidence of such property was not error. See also Dunn v. United States, 98 F.2d 119, 117 A.L.R. 1302 (10th Cir. 1938); State v. Conner, 59 Idaho 695, 89 P.2d 197, 201 (1939); Gragg v. State, 72 Okl.Cr. 189, 114 P.2d 491 (1941); Annot., 50 A.L.R. 531, 583–589 (1956).

upon the allegation of his unlawful possession of the firearm. The defendant has failed to establish that he has any right at this stage of the proceedings to claim error in the trial court's finding that the search of his suitcase was legal. The issue as to the legality of the search and seizure became moot when he elected to plead guilty.

■ The defendant further contends that his plea of guilty should be considered involuntary as he was under the influence of narcotics when he made it. Such being the case, he claims that the trial court erred in finding that he was not under the influence of drugs during the time of his incarceration at Ketchikan and the court proceedings against him there.

The record does not indicate that the defendant was under the influence of narcotics during any of the times mentioned. Dr. Carr, the jail physician, examined the defendant on August 1, 23, 29 and September 8 and 29. He testified that he found no evidence about the person of the defendant such as hypodermic needle scars, wasting, malnutrition or withdrawal symptoms (vomiting, collapse, pallor, sweating) to indicate that he, the defendant, was a narcotics user or was under the influence of narcotics, although the defendant did say that he had been on dope in Seattle. Nor did the doctor find any evidence of disorder in the defendant's thinking. He did not think that the defendant could have been using narcotics in the jail without the doctor's knowledge.

One of the officers who had interrogated the defendant on August 1, testified that he had had considerable police experience with "steady users" of narcotics. It was his opinion that the defendant was not a narcotic addict or under the influence of narcotics at any time that the officer observed him, including the 13th day of August, 1962, when he took the defendant to court for sentencing. A jailer testified that there were no narcotics found upon the defendant at the time he was admitted to the jail and relieved of his personal property. Although there were some drugs kept on hand in the jail, they were administered with great care. Dr. Carr did on occasion administer a tranquilizer, a sulfa drug, and antihistamine drugs to the defendant, but this all occurred after the defendant had been sentenced.

Added to the foregoing is the defendant's own statement on the subject made to the court at the time of sentencing as the same appears in the following colloquy:

"Court: Mr. Rivett, do you have anything you wish to say?

"Mr. Rivett: Yes, other than what my attorney says, I don't know why I do these things, I know right from wrong. I came from a good family, my father worked for the government for thirty years and I was raised right. I just don't know why—I want to do things right, but it seems like everytime I turn around it's wrong.

"Court: Mr. Rivett, this is not being offered as a criticism. The Court has nothing but sympathy for you and I have a very painful duty to perform. I don't enjoy it. But, I want to ask you, now, before the bar of this Court, is it true that you are addicted to the use of drugs?

"Mr. Rivett: Well, I am not a habitual, Your Honor. I have, what they say, chippied with it. I am not a user.

"Court. Is that when you get in trouble? When you try to chippy with it?

"Mr. Rivett: Yes, it is. I do not crave narcotics of [sic] anything like that.

"Court: But you do break over and use it and then is when your trouble commences?

"Mr. Rivett: Yes, it is, Your Honor. Along with the alcohol.

"Court. Do you have anything further you wish to say?

"Mr. Rivett: I would just like to do my sentence and straighten out."

Thus it appears obvious from the record that there is no merit to the defendant's present claim that he was under the influence of narcotics during his incarceration at Ketchikan, and we hold that the trial court's finding on that point was not in error.

This brings us to the defendant's last assignment of error, namely, that his court appointed attorney, Mr. Bailey, should have requested the court to order the defendant's personal presence at the hearing on the motion for a writ of habeas corpus. The defendant argues that, if he had been present and could have testified at the hearing, the outcome might have been different from what it was. He also feels that he should not be penalized for something his attorney failed to do for him. He does not state what his testimony would have disclosed, although we presume that he would have testified that he partook of narcotics while in the jail at Ketchikan or that he was still under the influence of narcotics at the time of incarceration from their use prior to his arrest. Such testimony would certainly be contrary to all of the other evidence in the record and would belie the defendant's own statement to the court at the time of sentencing:

"Well, I am not a habitual, Your Honor. I have, what they say, chippied with it. I am not a user. * * I do not crave narcotics. * * *"

Any testimony that the defendant might have given at the hearing to the effect that force and coercion were used to wring from him a confession or the plea of guilty would likewise have been contrary to the evidence in the record and would have been completely discredited by the defendant's own statements to the court on August 8, 1963, as follows:

"Court: Now listen, you understand there are four charges in the four different counts of this information?

"Mr. Rivett: Yes, I do.

"Court: And you wish to enter a plea at this time?

"Mr. Rivett: Yes.

"Court: And what is your plea?

"Mr. Rivett: Guilty.

"Court: Pleading "guilty" to all four charges?

"Mr. Rivett: Yes, I am.

"Court: You were informed of the full nature of your offense, and you consulted an attorney and employed an attorney?

"Mr. Rivett: Yes, I have.

"Court: Has any promise, of any kind, or immunity been offered to you?

"Mr. Rivett: None whatsoever.

"Court: Has any threat or intimidation, of any kind, been given you?

"Mr. Rivett: None.

"Court: Is this plea of "guilty" entirely of your own free will and volition?

"Mr. Rivett: It is.

"Court: And is the plea entered solely and only because you are guilty, and for no other reason?

"Mr. Rivett: It is."

Criminal Rule 35(b) is not mandatory in its provision regarding the presence of the defendant at a hearing on his motion attacking the sentence, but states that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing." In the case of United States v. Hayman [5] the Supreme Court interpreted a similar provision in 28 U.S.C.A. § 2255, after which our Rule 35(b) is patterned, as requiring the production of the prisoner at the hearing only "[w]here * * * there are substantial issues of fact as to events in which the prisoner participated." [6] And, as Judge Barnes of the Federal Court of Appeals, Ninth Circuit, points out in a more recent case, [7] the provision under discussion "leaves something to the judicial discretion of the trial judge."

The strongest case we have been able to find for the defendant is that of Juelich v. United States, [8] in which it was held that a petitioner was entitled to be present at the hearing on his section 2255 motion where he claimed that he had been mentally incompetent at the time of his trial because he was under the influence of drugs administered to him by the physician attending the jail. Said the court:

"In a situation of this type there are necessarily two people involved—the person administering the drug and the person to whom it was administered.

At the hearing following our remand, the 80-year-old jail physician testified that he did not have an independent recollection of the facts, but that the permanent official records indicated no such drugs were administered as claimed. This was corroborated by the jail nurse. But as the other actor in this claimed occurrence, the Petitioner was personally involved and by the nature of things had his version of what had been done. This was, therefore, one of those rare cases in which Petitioner's presence was required." [Citing cases.] [9]

The Juelich case is to be distinguished, however, for there the defendant was quite specific in his assertions as to what had transpired in the jail where he was confined. In the instant case the defendant Rivett makes only vague and general charges of force, threats and coercion used against him and of being under the influence of narcotics while in jail. He has presented no such substantial issue of facts concerning events in which he participated as would have been necessary to require the trial court to order his production at the hearing. [10]

Finding no error in this case, we affirm the order of the superior court denying the defendant's application for a writ of habeas corpus. [11]

Affirmed.

5. 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, (1952).

6. Id. at 223, 72 S.Ct. at 274, 96 L.Ed. at 243.

7. McDonald v. United States, 282 F.2d 737, 744 (9th Cir. 1960).

8. 316 F.2d 726 (5th Cir. 1963).

9. Id. at 727.

10. See United States v. Mathison, 256 F.2d 803, 805 (7th Cir.), cert. denied, 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91, (1958), in which the court stated that "it requires something more than making wild and unsupported charges to create issues of fact," and that "[a] petition under § 2255 must set forth facts as distinguished from mere conclusions." See also Richardson v. United States,

217 F.2d 696 (8th Cir. 1954); and United States v. Newman, 126 F.Supp. 94 at pages 97–98 (D.D.C.1954), in which the court, in answer to charges by the defendant of fraud and coercion, stated that in the light of the circumstances appearing in the record it was impossible to believe the charges and therefore no substantial issues were presented.

11. It is to be noted that the trial court's order denying the defendant's application for a writ of habeas corpus extended to and included any consideration of the application as a motion under Criminal Rule 32 for withdrawal of the plea of guilty or as a motion under Criminal Rule 35 attacking the judgment and sentence.