MONTE DEAN DODD, APPELLANT, v. DR. LOWELL R. HUGHES, DIRECTOR OF THE NEVADA STATE HOSPITAL, RENO, NEVADA, RESPONDENT.

No. 4771

January 29, 1965                    398 P.2d 540

*Carl F. Martillaro,* of Carson City, for Appellant.

*Harvey Dickerson,* Attorney General, and *C. B. Tapscott,* Deputy Attorney General, Carson City, and *William J. Raggio,* District Attorney, Washoe County, Reno, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

By a habeas corpus application addressed to the Second Judicial District Court, Dodd sought his release

from the Nevada State Hospital (NRS 433.040).[1] He had been committed to that institution as a mentally ill person by order of the Fourth Judicial District Court. At the habeas hearing, the Superintendent of the Nevada State Hospital gave his opinion that Dodd, though a sociopath, was not psychotic, and therefore not "mentally ill" within the meaning of NRS 433.200. He suggested that Dodd be released from his confinement. Another doctor was of a different view. Though he agreed that Dodd was not psychotic, he believed that a sociopathic personality may be considered "mentally ill" as that term is used in the statute. Additionally, he stressed Dodd's high potential for homicidal activity. At the conclusion of the hearing, the court directed the superintendent to apply to the board of state prison commissioners for that board's consent to confine Dodd at the Nevada State Prison. The superintendent did as directed. The prison commissioners consented, and Dodd was delivered to the Nevada State Prison for confinement until further order of the court (NRS 433.310).[2]

---

[1]NRS 433.040 reads: "Nothing in this chapter shall limit the right of any person admitted to the hospital pursuant to this chapter to a writ of habeas corpus upon a proper application made at any time by such person or a relative or friend on his behalf." The section is a part of the chapter dealing with the Nevada State Hospital. See also: Overholser v. Boddie, 184 F.2d 240, holding habeas relief available to one committed as insane and who wishes to prove his sanity and obtain his release; and the Annot., 21 A.L.R.2d 1004.

[2]NRS 433.310 provides:

"1. Whenever a person legally adjudged to be mentally ill is deemed by the court or the superintendent to be a menace to public safety, and the court is satisfied that the facilities at the hospital are inadequate to keep such mentally ill person safely confined, the court may, upon application of the superintendent, commit such person to the Nevada state prison. The person shall be confined in the Nevada state prison until the further order of the committing court either transferring him to the hospital or declaring him to be no longer mentally ill.

"2. No person shall be ordered committed to the Nevada state prison under the terms of this chapter unless the consent of the board of state prison commissioners has been first obtained.

"3. All the provisions of law, so far as the same are applicable, relating to the confinement of mentally ill persons in the hospital shall apply to confinement of mentally ill persons in the Nevada state prison."

The hearing convinced the lower court that Dodd was and is mentally ill, a menace to public safety, and that the hospital facilities are inadequate for his safe confinement. Dodd has appealed from the order committing him to the state prison. He has also appealed from "the minute order denying the granting of a writ of habeas corpus." The record does not show that such a minute order was ever made. However, as the state has not challenged the appeal on that ground, we think it proper to treat the order, committing Dodd to the state prison, as a denial of his application for habeas relief, and will therefore assume jurisdiction to decide the matter. NRS 34.380 (3).

The legislature did not define "mentally ill" when it passed the law governing the Nevada State Hospital (NRS 433.010–433.640). Its failure to do so supplies the basis for Dodd's appeal. It is his position that a person must exhibit one of the psychotic reactions as classified by the American Psychiatric Association before he may be considered mentally ill. Absent a classified psychosis, one may not be committed and confined. A sociopath (defined in the testimony as a disorder of personality affecting the ethical and moral senses) like Dodd, (and all the evidence is in accord that Dodd is, indeed, a sociopath), does not fall within any of the classified psychotic reactions and, therefore, may not be institutionalized. So it is that we are urged to fashion a definition for the words "mentally ill" and thereby fill the void in the statutory hospital law. It is suggested that we confine mental illness to the psychotic reactions as classified by the American Psychiatric Association. We are wholly unable to follow that suggestion. The record before us shows that the psychiatrists who testified do not agree on the statutory meaning of "mentally ill." Further, the record reflects that psychiatrists in general are at war over the propriety of the classifications of psychosis as specified by the American Psychiatric Association. We seriously doubt that the legislature ever intended medical classifications to be the sole guide for judicial commitment. The judicial inquiry is not to be

limited so as to exclude the totality of circumstances involved in the particular case before the court. Recidivism, repeated acts of violence, the failure to respond to conventional penal and rehabilitative measures, and public safety, are additional and relevant considerations for the court in deciding whether a person is mentally ill. The assistance of medical examination and opinion is a necessary concomitant of the court hearing, but the court alone is invested with the power of decision. NRS 433.200. That power is to be exercised within the permissible limits of judicial discretion.

Here the record demonstrates a combination of things which should, and did, unquestionably, influence the lower court to enter the order it did. Dodd, an 18-year-old, was shown, by testing, to have the intelligence quotient of a high grade moron. All agree that he is a sociopath almost devoid of moral sense. He has been proven, at least to date, wholly unresponsive to either penal or rehabilitative measures,[3] nor does he give promise of response to available probation services or psychiatric treatment. He possesses homicidal tendencies, and is dangerous. Finally, one of the testifying psychiatrists stated that Dodd is mentally ill within the intendment of the statute. In these circumstances the lower court did not abuse its discretion in denying habeas relief and ordering that Dodd be transferred to the Nevada State Prison for confinement.

Affirmed.

BADT, J., concurs.

MCNAMEE, C. J., concurs in the result.

---

[3]He experienced trouble with the police when eight years old. He was placed in the Elko Boys School from 1960–1962. While there he fought frequently. He escaped. While loose he hit an elderly man on the head with a crowbar, covered him with kerosene or gas, and set him on fire. He was then sent to Preston, California, a prison for hard-core youth criminals. In 1963 he was committed to the Nevada State Hospital, from which he "eloped" on four separate occasions. Other significant signs are revealed in the record, but need not be set out here.